UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:                          )
                                )
ANDREW S. MICKLER               )    Case No. 04-35297
                                )    Chapter 11
                    Debtor(s)   )
                                )

## MEMORANDUM OPINION

This matter came before the Court for trial on March 8, 2005, on the Motion to Dismiss filed by the Debtor's former spouse, Terry J. Mickler (hereinafter "Terry"). The parties each appeared in person and by counsel and the Court, having heard the testimony and evidence presented at trial, reviewed the authorities submitted by the parties and conducted its own research, concludes this Chapter 11 case must be dismissed. The Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

## FINDINGS OF FACT

1.  The Debtor, Andrew S. Mickler (hereinafter "Andrew") and Terry were married on June 4, 1978. The marriage lasted more than 22 years before Terry filed a Petition for Dissolution of Marriage on April 11, 2000 in Jefferson County Family Court.

2.  The divorce proceedings were vigorously contested and tried before Judge Bowles of the Jefferson County Family Court on April 11, 2002. On January 15, 2003, Judge Bowles entered his Findings of Fact, Conclusions of Law and Order. (Defendant's Exh 1).

3.  In addition to numerous other marital distributions, Judge Bowles ordered that Andrew pay Terry an equalization payment in the amount of $109,061.50 as payment for her marital interest in the business known as Medical Practice of Andrew S. Mickler, M.D.

        With regard to maintenance, Andrew was order to pay Terry $7,000.00 per month for a period of one hundred forty-four (144) months effective September 1, 2001. Judge Bowles also ordered Andrew to pay Terry's attorney fees of approximately $21,841.75. (Defendant's Exh. 1).

4. Andrew filed a Motion to Alter, Amend and Vacate the Order (Defendant's Exh. 2), and the Family Court entered an Order on the Motion on April 3, 2003 (Defendant's Exh. 5), making the judgment final. On April 14, 2003, Andrew filed his Notice of Appeal seeking appellate review of the Family Court Orders entered January 15, 2003 and April 3, 2003. (Defendant's Exh 6). Andrew did not post a supersedeas bond as is required to stay enforcement of the orders.

5. On May 7, 2003, Terry moved in Family Court for a finding of contempt against Andrew for his alleged failure to comply with the previous orders. A hearing on the motion for contempt was scheduled for August 13, 2003. (Defendant's Exh. 7 and 9).

6. On August 11, 2003, two days before the contempt hearing, Andrew filed a voluntary petition for relief pursuant to Chapter 13 of Title 11, Case No. 03-35473. (Defendant's Exh. 17).

7. On October 20, 2003, Terry moved to dismiss the bankruptcy petition. After several continuances, the hearing on the motion to dismiss was held on January 28, 2004. Prior to the hearing, the parties reached an agreement that the bankruptcy would be voluntarily dismissed subject to, among other things, Andrew paying a reduced maintenance payment pending the decision of the Kentucky Court of Appeals. (Defendant's Exh. 22). An order dismissing the Chapter 13 bankruptcy case was entered January 28, 2004. (Defendant's

Exh. 20).

8. On April 2, 2004, the Kentucky Court of Civil Appeals affirmed the Jefferson Family Court's findings and conclusions with one exception, which is not relevant to the present motion.

9. Terry filed a second motion for contempt which Judge Bowles set for hearing on August 19, 2004.

10. On August, 18, 2004, the day before the scheduled contempt hearing, Andrew filed the instant petition under Chapter 11.

11. On September 20, 2004, Terry made the instant motion seeking the dismissal of Andrew's Chapter 11 bankruptcy case. Terry alleged the case should be dismissed pursuant to 11 U.S.C. § 1112(b) for cause, including unreasonable delay that is prejudicial to creditors. Terry also alleged the instant case was filed with a lack of good faith on the part of Andrew.

12. Andrew responded to the Motion to Dismiss on September 22, 2004, denying that the bankruptcy petition was filed with a lack of good faith.

13. Trial on this adversary was held on March 8, 2005.[1]

14. Andrew admitted that he has not paid Terry her interest in the medical practice and that he has not made regular maintenance payments in the amount determined by Judge Bowles. Andrew was uncertain of the exact amount of arrearage on his maintenance obligations. Additionally, while some portion of Terry's attorney's fees and costs were

---

[1] The trial on the motion to dismiss was held in conjunction with the trial on the dischargeability adversary proceeding filed by Andrew against Terry. In a previous decision, this Court has determined the debts owed by Andrew to Terry are nondischargeable

3

paid, Andrew was uncertain as to the exact amount.

15. Andrew failed to disclose on Schedule B of Personal Property his interest in a piano that had been appraised at over $9,500. Nor did he disclose his interest in a record collection that had been appraised at over $7,200. (Defendant's Exh. 36).

16. On Schedule F, Andrew only listed two unsecured nonpriority claims. Both of these claims relate to the debts mentioned above originating from the divorce proceeding (claim to Terry for $122,349.14 and to Terry's counsel, Terry Holloway, Esq., for $9,020.50). (Defendant's Exh. 36). By far, the overwhelming percentage of Andrew's unsecured debt is owed to Terry.

17. On Schedule I filed with his current Chapter 11 case, Andrew asserts his 2004 monthly income is only $35,282.37. (Defendant's Exh. 36). This amount is in conflict with the $37,861.05 amount reported for the 2004 figures on his "System Financial Summary." ((Defendant's 47). It appears Andrew understated his income on his bankruptcy schedules.

18. With regard to his expenses, Andrew testified he makes contributions to the University of Louisville. These contributions are made in order to purchase 2 sets of tickets to the University of Louisville basketball and football games.

19. He also testified that he pays for his adult son's college tuition, car, and car insurance.

20. Andrew maintained a bank account at First Harrison Bank in Corydon Indiana. As mentioned above, Andrew filed a previous Chapter 13 case. Terry filed a motion to dismiss which was set for hearing on January 28, 2004. On January 8, 2004, twenty days before the scheduled hearing, Andrew withdrew $515 from the bank account at First Harrison. On January 27, 2004, the day before the dismissal hearing, Andrew withdrew

      another $44,888 from this account. The next day, the day of the hearing, Andrew withdrew another $20,000. With these withdrawals, Andrew reduced his bank account balance to just over $400 on the day of the hearing. (Defendant's Exh. 42). No credible explanation was given for these withdrawals. The timing of these withdrawals indicate a deliberate attempt to shield these funds from Terry. The eventual disposition of these funds is unknown to the Court.

21. Evidence was presented that Andrew spends anywhere from $80 to $159 a month on comic books. For the year 2003, Andrew spent over $1,250 on comic books. (Defendant's Exh. 53). No comic books were scheduled on Andrew's Schedule B of Personal Property.

22. As for credit card payments, prior to the filing of this Chapter 11 bankruptcy petition, Andrew historically paid all monthly credit card debts in full, usually before their due date. Even when the balance exceeded $5,000, Andrew still paid the entire amount due. This practice continued even after the filing of the bankruptcy petitions. (Defendant's Exh. 53).

23. On the July 5 - August 4, 2003 statement, the balance owed was only $2,234.76. Yet on August 14, 2003, three days after Andrew filed his Chapter 13 bankruptcy petition, Andrew paid $10,000 on his credit card. The check for this payment is dated August 9, 2003, just two days prior to the filing of the Chapter 13 bankruptcy petition. No explanation was given for this overpayment. Additionally, on the July 5, 2004 - August 4, 2004 statement, the month before the instant bankruptcy petition was filed, Andrew again paid more than the amount due. Due to the timing of these payments, the Court concludes that Andrew was attempting to shield or hide assets from Terry and his other

creditors. (Defendant's Exh. 53).

24. The parties vigorously disputed the amount of increase in the cost of malpractice insurance Andrew has to pay. Andrew testified that his malpractice premiums increased dramatically from 2003 to 2004. He contended the malpractice insurance increased from approximately $17,896.12 to $24,242.80. This higher amount is the one reflected on Andrew's exhibit of monthly expenses. (Plaintiff's Exh. 1 and 16). This figure is in conflict with the documents Andrew submitted to Terry which reflects the malpractice insurance as only $20,013, consisting of $18,660 for premiums and a finance charge of $1,353. (Defendant's Exh. 46 and 55). From the evidence presented, the Court concludes that while Andrew may have paid the higher figure, it was due to his making the down payment for 2004 coverage and 2005 coverage during the calendar year 2004, thereby artificially inflating the annual cost amount.

25. There were numerous discrepancies between Andrew's Schedule J expenses filed with his Chapter 11 case and his list of expenses filed in connection with this adversary proceeding. (Defendant's Exh 36 and Plaintiff's Exh. 1) Both exhibits include items which Andrew has no legal obligation to pay (son's auto, college tuition, and charity). Although Andrew resisted the characterization that he had "padded" his business and personal expenses, the evidence leads the Court to the opposite conclusion. To illustrate, Andrew asserted his 2004 taxes will be significantly higher than his 2003 taxes even though he previously testified that his 2004 income is significantly less than his 2003 income. The Court will not address each of the other specific expenses, but will instead state that many of the expenses appear to be voluntary, inflated, and excessive.

26. Andrew did not close his current bank account and open a debtor-in-possession bank account as instructed by the United States Trustee's Office at Andrew's Section 341 Meeting of Creditors.

27. At the time of trial, Andrew admitted he had not filed any of the required monthly operating reports since the inception of the instant bankruptcy case.

## **CONCLUSIONS OF LAW**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and venue is proper under 28 U.S.C. § 1409(a). The parties have submitted to the jurisdiction of this Court.

Under 11 U.S.C. § 1112(b), the Court may dismiss a debtor's case for cause. That statute goes on to provide a non-exhaustive list of grounds constituting clause. The lack of good faith in filing a Chapter 11 petition has been held to constitute cause for dismissal. In re Trident Associates Ltd. Partnership, 52 F.3d 127, 130(6th Cir. 1995); In re Charfoos, 979 F.2d 390, 392 (6th Cir. 1992). Good faith is determined using a "totality of the circumstances" test. In re Okoreeh-Baah, 836 F.2d 1030, 1033 (6th Cir. 1988); In re Barrett, 964 F.2d 588, 591 (6th Cir. 1992). With respect to good faith the Sixth Circuit has set forth some guidelines a Court should consider when determining if a debtor has acted in good faith: (1) the debtor has one asset; (2) the pre-petition conduct of the debtor has been improper; (3) there are only a few unsecured creditors; (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court; (5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford; (6) the filing of the petition effectively allows the debtor to evade court

orders; (7) the debtor has no ongoing business or employees; and (8) the lack of possibility of reorganization.  In re Laguna Associates Ltd. Partnership, 30 F.3d 734, 738 (6th Cir. 1994) (citations and internal quotations omitted).

Several of these factors are present here.  Andrew listed only two unsecured creditors, both connected with the state court divorce proceeding.  It is clear to this Court that the purpose of this bankruptcy case was to continue the "fight" with Terry that Andrew has been engaged in for the last several years in connection with their divorce.  Rather than posting a supersedes bond as required under Kentucky law to stay enforcement of the state court orders, Andrew instead chose to file for protection under the Bankruptcy Code.  "This court should not, and will not, act as a substitute for a supersedeas bond of state court proceedings." In re Wally Findlay Galleries (New York), Inc., 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984); In re C-TC 9th Avenue Partnership, 113 F.3d 1304, 1310 (2d Cir. 1997).

Andrew has a history of conduct which would lead this Court to conclude he has undertaken a strategy to thwart Terry's efforts at collecting the debts awarded to her in state court. The facts pertaining to the withdrawal of the bank account funds immediately before the hearing in the previous Chapter 13 case are particularly troubling.  Additionally, Andrew's propensity to make major financial transactions immediately preceding court dates evidences Andrew's intention to manipulate the legal system.

During a substantial amount of time in this bankruptcy case, Andrew failed to comply with the minimal requirements imposed on Chapter 11 debtors.  Andrew did not file monthly operating

reports and did not immediately set up his debtor in possession bank account.[2]

The Court finds that Andrew has been less than honest and forthcoming in his schedules and statement of financial affairs. The Court listed several instances above where Andrew inflated expenses, minimized income, and omitted assets. Factual misrepresentation and omissions on bankruptcy schedules certainly indicate a lack of good faith and constitute cause for dismissal of a debtor's bankruptcy case. In re Charfoos, 979 F.2d 390, 394 (6th Cir. 1992).

"Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed." 11 U.S.C. § 349(a). This language expressly recognizes that the Court may, for cause, order that the dismissal of a bankruptcy case will bar the discharge in a later bankruptcy case of debts that were dischargeable in the case dismissed.

For the reasons set forth in the Memorandum Opinion and Judgment entered in Adversary No. 04-3284, the Court finds that such cause exists here with respect to Andrew's obligations to Terry. Additionally, Andrew's reckless indifference to the accuracy of his schedules, his manipulation of the legal system, and his disregard of standard Chapter 11 procedures also constitutes cause to except these obligations from discharge in any future bankruptcy cases.

For the reasons set forth above, an order dismissing this case will be entered this same date.

---

[2] The Court notes that shortly after the trial of this matter, Andrew filed several monthly operating reports.

9

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:

ANDREW S. MICKLER )   Case No. 04-35297
 )   Chapter 11
    Debtor(s). )

### ORDER

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the above-styled case is hereby **DISMISSED** and the debtor is barred from re-filing a petition under Title 11 for a period of 24 months. It is further

**ORDERED** that, pursuant to 11 U.S.C. § 349(a) and in accordance with the Memorandum Opinion and Judgment entered in Adversary No. 04-3284, the debts arising from the dissolution of the marriage between the Debtor and Terry J. Mickler may not be discharged in any future bankruptcy case filed by the Debtor.

This is a final and appealable order and there is no just reason for delay.